SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CRIMINAL TERM, PT. 21
-----------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,        DECISION AND ORDER

        -against-

                                      Indictment No. 1589/2011

NECHEMYA WEBERMAN,
                          Defendant.
-----------------------------------------------------------------x

INGRAM, J.


       Defendant stands convicted, after a jury trial in Supreme Court, Kings County on

December 10, 2012, of one count of Course of Sexual Conduct against a Child in the First

Degree (P.L. 130.75(1)(b)), twelve counts of Criminal Sexual Act in the Second Degree (P.L.

130.45(1)), two counts of Criminal Sexual Act in the Third Degree (P.L. 130.40(2)), eighteen

counts of Sexual Abuse in the Second Degree (P.L. 130.60(2)), twenty-five counts of Sexual

Abuse in the Third Degree (P.L. 130.55), and one count of Endangering the Welfare of a Child

(P.L. 260.10(1)). On January 22, 2013, Defendant was sentenced to twenty-five years jail, ten

years post-release supervision and a $5,000 fine for the first-degree course of sexual conduct;

twelve consecutive terms of six years jail and five years post-release supervision for the counts

of second-degree criminal sexual act; two consecutive terms of three years jail and five years

post-release supervision for the counts of third-degree criminal sexual act; nineteen concurrent

terms of one year jail for the second-degree sexual abuse and endangering counts; and twenty

five concurrent terms of three months jail for the third-degree sexual abuse counts. Based on the

sentencing structure imposed by this Court, Defendant was sentenced to a total of 103 years jail.

(Ingram, J., at trial and sentence).

Defendant filed brief in the Appellate Division, Second Department, appealing his judgment of conviction. Defendant alleged the following: 1)the evidence was not legally sufficient to establish the convictions beyond a reasonable doubt; 2) the Court denied him a fair trial by precluding him from presenting evidence supportive of his defense; 3)the prosecutor's summation denied Defendant a right to a fair trial; and 4) the sentence imposed was excessive. On December 9, 2015,  the Appellate Division modified Defendant's judgment of conviction, by vacating the convictions of sexual abuse in the second degree under counts 45 and 46 of the indictment, which were submitted as counts 31 and 32 on the verdict sheet, vacating the sentences imposed thereon, and dismissing those counts of the indictment. *People v. Weberman*, 134 A.D.3d 862, 862(2d Dept. 2015). The Appellate Division found that the evidence was legally sufficient to establish, beyond a reasonable doubt, Defendant's guilt of course of sexual conduct against a child in the first degree, criminal sexual act in the second degree, under the third and fourth counts in the indictment, and sexual abuse in the second degree, under counts 31, 32, 59 and 60 in the indictment. The Appellate Division held that the verdict of guilt as to all remaining counts was not against the weight of the evidence. *Weberman*, 134 A.D.3d at 863. The Appellate Division also held that Defendant was not deprived of his constitutional right to present a defense by the trial court's application of the Rape Shield Law. *Id.* Furthermore, the Appellate Division held that this Court providently exercised its discretion in precluding Defendant from cross-examining the complainant about alleged prior allegations of sexual abuse. *Id.* The Appellate Division also held that the sentence was not excessive and Defendant's remaining contentions that this Court's evidentiary rulings deprived him of his constitutional rights to a fair trial, due process and to present a defense, were without merit. *Id.* Finally, the

2

Appellate Division held that Defendant's remaining contentions were unpreserved for appellate review. *Id.*

On July 7, 2016, the Court of Appeals  denied Defendant's leave application. *People v. Weberman*, 27 N.Y.3d 1156 (2016)(Abdus-Salaam, J.).

## The Motion Before the Court

By motion dated September 28, 2017, Defendant now moves to vacate his judgment of conviction pursuant to C.P.L. § 440.10 on the following grounds: (1) that his trial counsel was ineffective; (2)prosecutorial misconduct; (3) newly discovered evidence; and 4)Defendant was actually innocent.  Defendant also submitted a Supplemental Affirmation dated October 19, 2017.

The People filed response on April 27, 2018 arguing that Defendant's claims are procedurally barred from review and  without merit.

Defendant filed a Reply Memorandum of Law dated May 24, 2018.

On October 5, 2018, the Court heard oral arguments.

In deciding the instant motion, this Court considered Defendant's moving/reply papers, the People's papers in opposition, the court file, transcripts, oral arguments and applicable law.

## The Court's Decision

The first five points of Defendant's C.P.L. § 440.10 motion pertain to the claim that Defendant was deprived of effective assistance of trial counsel. A C.P.L. § 440.10 motion is the appropriate avenue for relief when a claim of ineffective assistance of counsel based upon the

3

facts *dehors* the record.  However, when ineffective assistance claims could have been raised in a direct appeal in that there were sufficient facts on the record to have permitted appellate review of those issues, it is barred by C.P.L. § 440.10(2)(c).  *People v. Pacheco,* 50 A.D.3d 1063(2d Dept. 2008); *People v. Baxter*; 262 A.D.2d 1068(4th Dept. 1999); *People v. Wong*, 256 A.D.2d 724(3rd Dept. 1998); *People v. Pachay*, 185 A.D.2d 287(2d Dept. 1992).  C.P.L. § 440.10(2)(c) provides that a court must deny a motion to vacate a judgment when, although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.  The trial transcript is replete with discussions between the Court and trial counsel concerning the testimony about the Satmar religious beliefs/customs (Defendant's Point I), cross-examination of Defendant concerning "bad acts" (Defendant's Point III), and defense counsel's inquiry about the complete therapy records from the Jewish Board of Family and Children's Service, Inc. ("Jewish Board") (Defendant's Point IV).  Defense counsel's objections to the charges as being duplicitous are on the record. (Defendant's Point II).  The openings and summations, including the alleged inappropriate comments made by defense counsel, are also on the record. (Defendant's Point V).  Thus, the record contains sufficient facts to have permitted, upon appeal from such judgment, adequate review of the claims of ineffective assistance of counsel.

However, even if the claims of ineffective assistance of counsel were not procedurally barred, this Court finds that these claims raised by Defendant are without merit.  The right to

4

effective assistance of counsel is guaranteed by the federal and state constitutions.  U.S. Const. Amend VI; NY Const. Art. I, § 6.  In order to prevail on a claim of ineffective assistance of counsel under the United States Constitution, "a defendant must show that counsel's representation fell below an objective standard of reasonableness " and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the New York Constitution, a defendant must show that he was not afforded "meaningful representation".   *People v. Baldi*, 54 N.Y.2d 137, 147 (1981).  The Court of Appeals has held that a defense attorney's performance will not be considered ineffective "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation." *Baldi*, 54 N.Y.2d at 147.  Meaningful representation does not mean perfect representation. *People v. Benevento*, 91 N.Y.2d 708 (1998).  "The question is whether the attorney's conduct constituted egregious and prejudicial error such that defendant did not receive a fair trial." *Benevento*, 91 N.Y.2d at 713.  In contrast to the federal standard, which looks to the outcome of the case, New York courts must consider "prejudice...[,] a component which focuses on the fairness of the process as a whole rather than any particular impact on the outcome of the case." *People v. Yagudayev*, 91 A.D.3d 888, 890 (2d Dept. 2012).  Defendant bears the burden of overcoming the strong presumption that defense counsel rendered effective assistance by demonstrating the absence of strategic or other legitimate explanations for counsel's alleged errors. *People v. Barboni,* 21 N.Y.3d 393, 406(2013).

Applying the above legal principles, this Court finds that Defendant's ineffective assistance of counsel claim is without merit.  Defendant received meaningful representation and

the record reflects that defense counsel exceeded both State and Federal criteria. In this case,

Defendant was represented by three seasoned, experienced trial attorneys - George Farkas, Esq.,

Michael Farkas, Esq., and Stacey Richman, Esq.  During extensive legal arguments, an appellate

attorney, Richard Mischel, Esq. was present in court to assist counsel.  Defense counsel

challenged the sufficiency of the grand jury minutes and opposed the People's *Sandoval* and

*Molineux* motions. Defense counsel filed approximately seven motions *in limine* and responses

to the People's motions *in limine*, not to mention numerous oral motions *in limine* prior to and

during trial.  Counsel  participated actively in voir dire, made an opening statement and

vigorously cross-examined all of the People's witnesses, especially the complainant, who was

extensively cross-examined with re-direct and re-cross for four days. Defense counsel put on a

thorough defense case, including four witnesses, and delivered a sound summation.  Defendant

chose to give testimony on his own behalf. This Court cannot second guess defense counsels'

tactics or strategies pursued during the hearing and trial.  "Trial tactics which terminate

unsuccessfully do not automatically indicate ineffectiveness.  So long as the evidence, the law,

and the circumstances of the particular case, viewed in totality and as of the time of the

representation, reveal that the attorney provided meaningful representation, the constitutional

requirement will have been met." *Baldi*, 54 N.Y.2d at 146-47.  A claim of ineffective assistance

of counsel requires proof of less than meaningful representation, not just a mere disagreement

over strategies and tactics.  *People v. Benn*, 68 N.Y.2d 941(1986).  "To prevail on a claim of

ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of

strategic or other legitimate explanations for counsel's [supposed] failure."  *People v. Rivera*, 71

N.Y.2d 705 (1988).  Since Defendant here has failed to carry his burden, "it will be presumed

that counsel acted in a competent manner and exercised professional judgment". *Rivera*, 71

N.Y.2d at 705.


## POINT I - INEFFECTIVE ASSISTANCE OF COUNSEL BY ALLEGEDLY FAILING TO OBJECT TO EVIDENCE REGARDING THE SATMAR COMMUNITY

Defendant alleges that his trial counsel was ineffective for not objecting to the admission

of expert testimony on the Satmar Hasidic culture. In order to show that trial counsel was

ineffective, a defendant must show that his trial counsel had some likelihood of prevailing on the

motion that he contends should have been made. "A defendant is not denied effective assistance

of trial counsel merely because counsel does not make a motion or arguments that has little or no

change of success." *People v. Stultz*, 2 N.Y.3d 277, 287 (2004). While defense counsel did not

directly object to the admission of evidence concerning the Satmar Hasidic culture, they filed a

motion *in limine* requesting a pre-trial hearing to determine the admissibility of the People's

proposed "Hasidic culture expert" and requested oral arguments on this issue. As stated in this

Court's decision, dated August 30, 2012, the purpose of admitting an expert witness' testimony

was to assist the jury in understanding matters that were relevant to an issue in the trial, but were

not within the experience of the average juror. The People argued that, because of the closed

nature of the Satmar Hasidic community, its beliefs and mores were not well-known to the public

and jurors may have been unaware of the rules regarding acceptable female behavior and

behavior between members of the opposite sex. This Court agreed with the People that the

Satmar Hasidic culture, specifically, the rules regarding acceptable female behavior and

acceptable behavior between members of the opposite sex, were beyond the ken of the average

juror due to the closed nature of this community. *See People v. Scott*, 70 A.D.3d 977 (2d Dept. 2010)(holding that Supreme Court providently exercised its discretion in admitting testimony of expert witness concerning gangs, including their customs and violent practices). While Defendant alleged that the evidence tended to show acts of an unusual and perhaps immoral nature, the purpose was not to demonstrate a propensity to commit the crimes of which Defendant stood charged. *People v. LeGrand*, 76 A.D.2d 706, 710(2d Dept. 1980). As this Court had noted prior to trial, a trial court has broad discretion in making evidentiary rulings and that evidence is admissible if it has a rational probative value unless there is a specific rule that excludes them from admissibility. *People v. Aska*, 91 N.Y.2d 979 (1998).

Defendant cites *People v. Forchalle*, 88 A.D.2d 645(2d Dept. 1982) to support his position that he was deprived a fair trial by the admission of evidence concerning the Hasidic culture. The Appellate Division found that the defendant was denied a fair trial when he was cross-examined concerning the practices of the defendant's church since the church's practices had no relevance to the issue of the trial. *Forchalle*, 88 A.D.2d at 648. However, in the case at bar, evidence about the beliefs of the Satmar Hasidic community was relevant as background evidence to explain the complainant's behavior. According to the testimony, it was one of the main reasons for the complainant not coming forward and disclosing the sexual abuse and was not introduced to smear the Satmar Hasidic community, as alleged by Defendant. Based on the valid reasons for permitting this testimony, there was no chance defense counsel would succeed in this argument. Therefore, Defendant did not establish that his trial counsel was ineffective by failing to object to admission of expert testimony on the Satmar Hasidic community/culture.

## POINT II - INEFFECTIVE ASSISTANCE OF COUNSEL- ALLEGED FAILURE TO MOVE FOR DISMISSAL OF THE DUPLICITOUS INDICTMENT

Defendant argues that trial counsel were ineffective for failing to move to dismiss Counts 3 through 85 of the indictment charging Defendant with sexual abuse against complainant during December 5, 2007 to March 31, 2010. However, the record is clear that defense counsel argued to this Court on November 26, 2012, before trial, that the indictment was duplicitous. In addition, defense counsel confirmed that he raised the duplicity issue before the trial started when he argued before this Court, once again, that the charges were duplicitous stating, "As we raised before the trial started. Our objection to the verdict sheet is the same as to the charges themselves in the indictment. We believe they are multiplicitous, or duplicitous." (T. at 1683). The Court denied defense counsel's motion. It is clear, based on the record, that defense counsel made the duplicity claim to this Court twice, This Court denied this argument both times. Therefore, trial counsel cannot be deemed to be ineffective for failing to make an argument when the record is clear that the objection was made before this Court.

## POINT III - INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE PROSECUTION'S CROSS EXAMINATION

Defendant's argues trial counsel was also ineffective due to the failure of counsel to object the prosecutor's cross-examination of Defendant about his not-for-profit corporation. As stated above, the record presented sufficient facts from which Defendant could have raised his present claim on appeal. Defense counsel and the People made lengthy arguments before this Court concerning the alleged prejudicial cross-examination of Defendant, all on the record.

Since this issue could have been raised on direct appeal, it cannot properly be raised on the instant motion. C.P.L. 440.10(2)(c).

The Court denies Defendant's argument even if considered on its merits. Based on Defendant's response to the People's question concerning the purpose of the not-for-profit corporation, the People inquired further. This further inquiry is the subject of Defendant's motion. The day after the testimony, defense counsel raised an objection to the People's questions and defense counsel and the People then agreed to an instruction regarding the testimony regarding the not-for-profit corporation. Before the final charge to the jury, this Court instructed the jury to disregard any testimony elicited by the People regarding the not-for-profit corporation and any comments made by the People on the alleged use of funds for his personal use from the not-for-profit corporation. This Court repeated this instruction in the final instruction to the jury. The objection, once made to the Court, had been promptly and appropriately dealt with through the instructions to the jury. In addition, there was no objection by defense counsel to language of the curative instruction, thus the Court's response to the objection must be deemed to have corrected any error to Defendant's satisfaction. *People v. Heide*, 84 N.Y.2d 943, 944(1994). Therefore, Defendant did object to the People's questioning and obtained an adequate ruling by this Court based on the failure to object to the language of the instructions.

10

POINTS IV AND VI - PEOPLE'S ALLEGED FAILURE TO DISCLOSE COMPLETE
THERAPY RECORDS RESULTED IN  DISCOVERY, ROSARIO AND BRADY
VIOLATIONS AND DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL
DUE TO ALLEGED FAILURE TO REQUEST DISCLOSURE OF COMPLETE RECORDS

Defendant alleges that the People failed in their discovery obligations under *Brady,*

*Rosario*, and C.P.L. § 240.20 by not turning over all counseling notes relating to the complainant

from the Jewish Board.   In New York, the People must make a good faith effort to discover the

existence of all demanded property and to turn over such property for discovery if in existence,

even if it is not in the People's possession.  C.P.L. § 240.20(2).  However, "the prosecutor shall

not be required to obtain by subpoena duces tecum demanded material which the defendant may

thereby obtain."  C.P.L.§ 240.20(2). The People requested the complainant's therapy records

from the Jewish Board and turned over to defense counsel the records they received, thereby

fulfilling their discovery obligations pursuant to C.P.L. § 240.20.

Defendant also alleges that the People violated their *Brady* and *Rosario* obligations by not

obtaining and disclosing the full therapy records of the complainant from the Jewish Board.

C.P.L. § 240.45, which codified the holding established in *People v. Rosario*, 9 N.Y.2d

286(1961), requires the People to provide the defendant with any written or recorded statement

of a prosecution witness that related to that witness' trial testimony.  The People's obligation to

produce the pretrial statements of prosecution witnesses is limited to material which is within

their possession or control.  *People v. Washington*, 86 N.Y.2d 189, 191(1995); *People v. Flynn*,

79 N.Y.2d 879(1992); *People v. Young*, 113 A.D.3d 799(2d Dept. 2014)(holding that

handwritten notes of caseworker for New York City Administration for Children's Services were

not in possession or control of prosecution and thus did not constitute *Rosario* material).  To

11

establish a *Rosario* violation the defendant must show that the claimed *Rosario* material was in their possession and control and was not turned over to the defense. *People v. Williams*, 50 A.D.3d 1177, 1178-79(2d Dept. 2008).

Here, the People turned over all material in their possession. The People did not suppress the evidence because they did not have the records at issue in their possession. The People subpoenaed records for a certain time frame based on the outcry of the complainant. There is nothing in the record to indicate that the Jewish Board is a law enforcement agency in any sense. *People v. Fields*, 146 A.D.2d 505, 508-09(1st Dept. 1989). Therefore, the records were not *Rosario* material because they were not in the possession of the People.

Defendant alleges that the People are in constructive possession of the records due to the People being in possession of a portion of them. However, constructive possession refers to documents that are in the possession of law enforcement agencies, not private agencies, such as the Jewish Board. *People v. Nova*, 206 A.D.2d 132(1st Dept. 1994)(holding that traditionally documents in possession of law enforcement have been deemed to be in constructive possession of People); *People v. Smith*, 206 A.D.2d 102(1st Dept. 1994)(holding that any documents in law enforcement possession are in constructive possession of People).

Defendant has a right, guaranteed by the Due Process Clauses of both federal and state constitutions to receive favorable evidence in the People's possession which is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87(1963). To establish a *Brady* violation, a defendant must show that (1)the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2)the evidence was suppressed by the prosecution; and (3)prejudice arose because the suppressed evidence was material." *People v. Garrett*, 23

12

N.Y.3d 878, 889(2014), *quoting People v. Fuentes*, 12 N.Y.3d 259, 263(2009); *see also Strickler v. Greene*, 527 U.S. 263, 290 (1999). "In New York, where a defendant makes a specific request for a document, the materiality element is established provided there exists a 'reasonable possibility' that it would have changed the result of the proceedings." *Fuentes*, 12 N.Y.3d at 263 *quoting People v. Vilardi*, 76 N.Y.2d 67, 77(1990). "Absent a specific request by defendant for the document, materiality can only be demonstrated by a showing that there is a 'reasonable probability' that it would have changed the outcome of the proceedings." *Fuentes*, 12 N.Y.3d at 263. While New York recognizes that a *Brady* violation may happen even if defense counsel never makes a specific request for exculpatory material or only a general request for such has been made, it does not create a rule of law that the prosecution is charged with a failure to produce exculpatory material whenever such material exists and is not disclosed. The People's duty to disclose exculpatory information arises only if it is in their possession. *Vilardi*, 76 N.Y.2d at 67. If defense fails to establish that the People were in possession of exculpatory information at the time of trial, there is no *Brady* violation. *People v. Broxton*, 34 A.D.3d 491(2d Dept. 2006). People are not under a duty to obtain or create this evidence for Defendant's benefit. *People v. Alvarez*, 70 N.Y.2d 375(1987).

As in the *Rosario* context, the People cannot be charged with failure to disclose exculpatory evidence that is not in their custody, possession or control. *Garrett*, 23 N.Y.3d at 878. As stated above, the People only subpoenaed what they perceived as relevant records and turned those over to Defendant. Included in those records was a note that stated complainant had previously denied trauma. Therefore, Defendant already knew about this denial that they now allege in their *Brady* and *Rosario* violation claims. *See People v. Doshi*, 93 N.Y.2d 499(1999);

13

*People v. McClain*, 53 A.D.3d 556(2d Dept. 2008). Evidence is not considered suppressed if Defendant knew or should have reasonable knowledge of the evidence and its exculpatory nature. *People v. LaValle*, 3 N.Y.3d 88, 110(2004). Furthermore, since there was no specific request made by any of the three experienced trial defense attorneys in this matter for the records, the materiality of the subject documents must be established through the reasonable probability that production of the records would have changed the outcome of the case, "i.e., a probability sufficient to undermine the court's confidence in the outcome of the trial." *People v. Ulett*, 153 A.D.3d 945 (2d Dept. 2017). In this case, had the records been obtained and disclosed, there is no reasonable probability that the verdict would have been different. The intake report of the Jewish Board therapy records listed a question as to whether the complainant had a past history of significant trauma, such as sexual assault, and whether an adult had touched her private sexual body parts when she did not want them to. The boxed labeled "No" was checked. First, the records fail to establish the source of the statement at issue and thus cannot be imputed to the complainant. *People v. Filippone*, 271 A.D.2d 219(1st Dept. 2000). Even if complainant answered these questions as indicated in the intake form, there is not a reasonable possibility that it would have changed the result of the trial. The complainant explained during her testimony at trial that she outcried on February 16, 2011, nearly 5 years after the beginning of the sexual abuse. Prior to this outcry, the complainant never told anyone about the abuse, consistent with the information on the intake report. Even assuming the reasonable possibility standard is applied to this case, vacatur is still not warranted.

Defendant also claims that Defendant was deprived of effective assistance of counsel due to the failure of trial counsel to request disclosure of the complainant's therapy records from the

14

Jewish Board.  Defense counsel did inquire about whether the People were in possession of additional records and asked the People if they would obtain the records.  In addition, as stated above, even if the additional records had been produced before the jury, there would be no substantial likelihood of a different result, nor did Defendant establish that he was deprived of a fair trial because such evidence was not produced a trial.

## POINT V - INEFFECTIVE ASSISTANCE OF COUNSEL BY IMPROPERLY SHIFTING THE BURDEN OF PROOF TO DEFENSE

Defendant alleges that defense counsel was ineffective by improperly shifting the burden of proof to the defense.  Specifically, Defendant alleges that he was prejudiced by defense counsel shifting the burden of proof both in the opening statement and in summation.  Defendant specifically highlights his opening statement, when defense counsel stated, "We can't sit here and rely on the presumption of innocence....We have to do a lot more."  However, as the People argue in their response, defense counsel also stated in the opening, "Now, we don't believe that we have to prove his innocence."  When defense counsel continued, "It may not be all pretty and nice, but we do have a very heavy burden", this Court instructed the jury about the burden of proof.  This Court stated "I want to make it very clear that the defense has no heavy burden in this case.  The defense has no burden to prove or disprove anything.  The burden of proof in this case lies with the government, the prosecutor, the assistant district attorney.  So, certainly, I just want to make it clear that the defense has no burden."  This Court accurately informed the jury who had the burden of proof **four** times in that brief instruction.  This Court also interjected when defense counsel called certain evidence a "smoking gun of innocence" by promptly

instructing the jury that "the question of innocence is not decided by the jury. The defendant has

a presumption of innocence throughout the trial." The Court continued to instruct the jury about

the People's burden of proof.   During both the initial and final instructions to the jury, the Court

consistently emphasized the fact that the defense had no burden of proof and that the People's

burden of proof never shifted to Defendant. Any possible prejudice by defense counsel's

statements were dissipated by this Court's prompt curative instruction immediately following the

remarks and in its final instructions. *People v. Aversa*, 156 A.D.2d 371(2d Dept. 1989: *People v.*

*Lebron*, 114 A.D.2d 859(2d Dept. 1985). The jury is presumed to have followed this Court's

instructions. *People v.* Davis, 58 N.Y.2d 1102(1983); People *v. Singleton*, 270 A.D.2d 190(1st

Dept. 2000).  Based on the record, there was no prejudice to Defendant.


## POINT VII PROSECUTORIAL MISCONDUCT

Defendant alleges that the People committed numerous acts of misconduct that denied

Defendant a fair trial.  Defendant claims the following violations: (1) People introduced false or

misleading testimony in the grand jury; (2)People misrepresented the controlled calls between the

complainant and Defendant; and (3) People committed *Brady* and or *Rosario* violations

concerning the complainant's statements in her boyfriend's closed criminal case.

Defendant's claim that the People committed *Rosario* and *Brady* violations by not

disclosing to defense a copy of a letter allegedly written to the Court seeking to have the case

against her boyfriend ("J.S.") dismissed.   The People did not commit a *Rosario* violation since

the letter was not written by a prosecution witness.  In addition, the People were not in

possession of the letter due to the fact that the file that contained the letter was sealed under

16

C.P.L.§ 160.50(1). C.P.L. § 160.50(1) mandates sealing of a record upon the termination of a criminal action in favor of the accused. Here, there is no dispute that the case against J.S. was terminated in his favor. C.P.L. § 160.50(1)(c) states that "all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency." In 2005, the Court of Appeals addressed the questions of whether a prosecutor may obtain an unsealing order under C.P.L. §160.50(1)(d)(ii), the law enforcement exception. In *Katherine B. v. Cataldo*, the Court of Appeals rejected the position that the prosecutor could obtain an unsealing order pursuant to C.P.L. § 160.50(1)(d)(ii). *Katherine B. v. Cataldo*, 5 N.Y.3d 196, 203-05(2005). Therefore, the contents of the sealed file were not within the People's control. Furthermore, the People did not violate *Brady* by failing to turn over this document. Even without the actual letter, this Court permitted defense counsel to cross examine complainant about the alleged contents of the letter.

Defendant claims that the People presented false or misleading testimony to the grand jury. Specifically, Defendant alleges that the People knew that the complainant did not recall a specific incident that corresponded to any of the crimes alleged in Counts 3 through 87. There is nothing in the record to indicate that there was a knowing use of perjured testimony by the prosecutor. *People v. DeFreece*, 183 A.D.2d 842, 842 (2d Dept. 1992). Any discrepancies between the complainant's grand jury testimony and complainant's trial testimony are

17

insufficient to render the complainant's testimony perjurious. *People v. Jarvis*, 101 A.D.3d 749, 749 (2d Dept. 2012).

The next argument by Defendant is that newly discovered evidence contradicts the complainant's testimony and the People's theory of the case and would change the result at a new trial. Defendant alleges that the People falsely represented to the Court that the complainant's statements made during a controlled telephone call to Defendant were scripted by Detective Bruno and were untrue. Based on "newly discovered evidence" (affidavit by Detective Bruno), Defendant claims that Detective Bruno only made suggestions to the complainant based upon what the complainant had previously told him. The phone calls, which are out of court statements, were controlled phone calls initiated by law enforcement. Detective Bruno stated in his October 11, 2017 affidavit, provided by Defendant, that he "prompted her on what to say to Mr. Weberman." The People also provided the Court with an affidavit from the complainant that disputed Detective Bruno's affidavit.


## POINT VIII NEWLY DISCOVERED EVIDENCE

Defendant's eighth point was that newly discovered evidence contradicts the complainant's testimony and the prosecution's theory of the case. Defendant claims that therapy records, Detective Bruno's sworn statement and complainant's post trial lawsuit against Defendant constitute newly discovered evidence that would have created a probability that had such evidence been received at trial, the verdict would have been more favorable to Defendant. The power to permit a new trial based on newly discovered evidence is statutory and a new trial cannot be granted unless all the criteria of the statute have been met. *People v. Salemi*, 309 N.Y.

18

208(1955); *People v. Gurley*, 197 A.D.2d 534, 536 (2d Dept. 1993).  The determination as to

whether the statutory requirements have been met rests within the sound discretion of the court.

*People v. Baxley*, 84 N.Y.2d 208, 212(1994); *People v. Tankleff*, 49 A.D.3d 160(2d Dept.2007).

C.P.L. § 440.10(1)(g) permits a court to vacate a judgment of conviction when "[n]ew evidence

has been discovered since the entry of judgment based on a verdict of guilty after trial, which

could not have been produced by the defendant at the trial even with due diligence on his part

and which is of such character as to create a probability that had such evidence been received at

trial the verdict would have been more favorable to the defendant, provided that a motion based

upon such ground must be made with due diligence after the discovery of new evidence."   To

constitute newly discovered evidence within the meaning of the statute, defendant must establish

that the new evidence in question: (1)will probably change the result upon a new trial; (2)has

been discovered since the trial; (3)could have not been discovered before trial by the exercise of

due diligence; (4) is material to the issue; (5)is not cumulative to the former issue; and (6) is not

merely impeaching or contradicting the former evidence.  *People v. Salemi*, 309 N.Y. at 215-16.

The evidence must also be admissible at trial.  *People v. Boyette*, 201 A.D.2d 490, 491(2d Dept.

1994).

   The additional therapy records from the Jewish Board  are not considered newly

discovered evidence.   Defendant had the opportunity to access these records via subpoena duces

tecum.  Defense counsel requested a subpoena from this Court in order to obtain the records.

This Court stated that it would sign a subpoena and if the Jewish Board moved to quash the

subpoena, the Court would "go through the process".   In addition, the additional records from

the Jewish Board probably would not have changed the verdict.  There was extensive testimony

by the complainant. She was on the stand for a total of four days and was cross-examined, redirected and recrossed for three and a half of those days. She testified that she did not disclose to anyone that she was sexually abused by Defendant because she was too scared and did not think anyone would believe her. Therefore, the intake document that indicated that the complainant did not have a history of significant trauma, such as sexual assault and the partially completed USLA PTSD form that denied that an adult had touched her private sexual body part when she did not want them to, were consistent with her testimony that she concealed the sexual abuse. Therefore, even if these documents were received prior to trial, they would not have created a probability that the verdict would have been more favorable to Defendant.

Additionally, Defendant failed to meet his burden of establishing that Detective Bruno's affidavit, alleging that the statements that he told the complainant to make during the controlled phone calls concerning her knowledge of Defendant's role in the arrest of J.S., could not have been discovered before trial by the exercise of due diligence. *Salemi*, 309 N.Y. at 216. Detective Bruno was a defense witness at trial. Defense counsel had access to him and this information prior to his testimony. Defendant never submitted an affidavit from his trial counsel affirming that counsel attempted to speak with Detective Bruno and he refused. *People v. Ozona*, 7 N.Y.3d 913(2006). In fact, Detective Bruno testified at trial about the information contained in the affidavit. He testified that the complainant blamed her father and Defendant for the arrest of J.S. Therefore, this evidence probably would not have changed the result upon a new trial. In addition, complainant stated in pre-trial affidavit dated August 16, 2012 that her current boyfriend speculated that Defendant was involved in J.S.'s arrest and that she shared this speculation with Detective Bruno. In addition, Detective Bruno's allegations that ADA

20

O'Donnell failed to prepare him for trial and threatened him if he harmed the People's case are not allegations that would change the result of the trial. The People were under no obligation to include Detective Bruno in trial preparation. Furthermore, Detective Bruno was called as a defense witness. Nowhere in Detective Bruno's affidavit did he claim he altered his testimony based on these alleged threats. Therefore, the affidavit of Detective Bruno does not constitute newly discovered evidence.

Defendant also argues that the complainant's post-trial lawsuit against Defendant and two schools is newly discovered evidence. The civil lawsuit was filed nearly a year after the verdict was rendered. The fact that the complainant decided to file a civil lawsuit against Defendant and the two schools is not impeaching material. There was no evidence that the prosecutor had knowledge that complainant would file a civil lawsuit, nor was there evidence that prosecutor had possession of the civil complaint or that it even existed during the trial. There were no documents in the People's possession concerning the civil lawsuit, therefore, it was not Rosario material. Nor was there any evidence that at the time of the trial the complainant had planned to file a civil suit. The People cannot be imputed with knowledge of a lawsuit that was filed nearly a year after the verdict. Defendant's reliance on *People v. Wallert*, 98 A.D.2d 47(1st Dept. 1983), is misplaced. In *Wallert*, the complainant filed a civil lawsuit **two** days after the verdict and the prosecutor knew prior to the trial that the complainant had consulted an attorney, but was waiting for the verdict. *Wallert*, 98 A.D.2d at 48. The prosecutor never disclosed this information to Defendant's counsel. *Id.* Here, in contrast, there was no evidence that prior to the verdict, the complainant intended to file a civil lawsuit. Her testimony at trial was clear that at that time she did not plan to file a lawsuit. Furthermore, the complainant

21

did not file a civil lawsuit until approximately one year after the verdict.  Therefore, Defendant did not satisfy the statutory requirements to constitute newly discovered evidence.

## POINT IX ACTUAL INNOCENCE

Defendant's final claim is that sufficient evidence exists to make a prima facie case showing that he is actually innocent.   The Appellate Division held in *People v. Hamilton*, that a defendant may move to vacate a judgment of conviction pursuant to C.P.L. §440.10(1)(h) on the ground of actual innocence.  *People v. Hamilton*, 115 A.D.3d 12 (2d Dept. 2014).  With respect to a claim of actual innocence, a constitutional violation occurs only if there is clear and convincing evidence that the defendant is innocent.  *Hamilton*, 115 A.D.3d at 12.  "[T]he law is well settled that "actual innocence" means factual innocence, not mere legal insufficiency of evidence of guilt, and must be based on reliable evidence which was not presented at the trial." *Hamilton,* at 23.    "Mere doubt as to the defendant's guilt, or a preponderance of conflicting evidence as to the defendant's guilt, is insufficient, since a convicted defendant no longer enjoys the presumption of innocence, and in fact is presumed to be guilty."  *Id.* at 27.  To obtain a hearing on a claim of actual innocence, a defendant has the burden to make out a prima facie showing of actual innocence.  "A prima facie showing of actual innocence is made out when there is a sufficient showing of possible merit to warrant a fuller exploration by the court."  *Id.* This requires more than a repetition of claims that were asserted and rejected at trial.  *People v. Jiminez*, 142 A.D.3d 149(1st Dept. 2016).   "Exculpatory scientific evidence, trustworthy eyewitness accounts....[and] critical physical evidence" are examples of reliable evidence upon which actual innocence claims may be granted.  *Schlup v. Delo*, 513 U.S. 298, 324(1995).

Defendant's claim that he is actually innocent does not clear the threshold set by *Hamilton* in order to grant a hearing. Defendant's claim of actual innocence is largely based upon evidence that was ruled inadmissible by this Court. *People v. Macon*, 129 A.D.3d 484(1st Dept. 2015)(holding that defendant's claim of actual innocence is without merit because it is based on same evidence that court properly discredited). Furthermore, even if the evidence presented by Defendant were heard at trial it would only, at best, compete against the testimony of the People's witnesses and raise mere doubt as to Defendant's guilt or a preponderance of conflicting evidence as to Defendant's guilt, neither of which is enough to support a motion to vacate Defendant's conviction based on actual innocence. To the extent Defendant questions the credibility of some of the People's witnesses, such credibility issues would not warrant a hearing on actual innocence. For each piece of evidence that Defendant based his claim of actual innocence, the People provided conflicting evidence and witnesses to refute these claims.

Accordingly, Defendant's motion to vacate the judgment of conviction is denied.

This opinion constitutes the Decision and Order of this Court.

Dated: February 22, 2019
Brooklyn, New York

JOHN G. INGRAM
J.S.C.

23