UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
  NECHEMYA WEBERMAN,          :
                                 :
              Petitioner,    :
                                 :
      - against -        :
                                 :
  JAIFA COLLADO,            :
                                 :
           Respondent.   :
-------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

20-cv-3584 (BMC)

**COGAN**, District Judge.

      Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his conviction in New York Supreme Court, Kings County, of one count of Course of Sexual Conduct against a Child in the First Degree (PL § 130.75(1)(b)), twelve counts of Criminal Sexual Act in the Second Degree (PL § 130.45(1)), two counts of Criminal Sexual Act in the Third Degree (PL § 130.40(2)), eighteen counts of Sexual Abuse in the Second Degree (PL § 130.60(2)), twenty-five counts of Sexual Abuse in the Third Degree (PL § 130.55), and one count of Endangering the Welfare of a Child (PL § 260.10(1)).  For the reasons below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

      Petitioner, a spiritual counselor in the Satmar Hasidic sect of Orthodox Judaism, was convicted under New York law of one course of sexual abuse in the first degree, 57 individual criminal sex acts, and endangering the welfare of a child.  According to the indictment, the course of sexual abuse spanned from March 1, 2007, to December 4, 2007.  All of the individual criminal sexual acts were alleged to have occurred in one- or two-month intervals occurring on

or after December 5, 2007.  In other words, there was no overlap between the course of sexual abuse and individual sexual acts of which petitioner was convicted.

The primary evidence against petitioner at trial was the testimony of the victim.  She and her family were also members of the Satmar community.  The victim's parents sent her to petitioner for spiritual counseling when she was twelve years old, because her parents believed she was having problems complying with the strict rules of the Satmar community and the religious school that she attended.  She testified to numerous incidents of friction between her and school authorities over what she considered to be limitations on her freedom and ability to express herself, including her ability to socialize with boys.

Her first counselling session lasted several hours.  There, petitioner told her that he had always looked at her when she was younger and that he "couldn't wait" to see her more.  The victim then testified, in graphic detail, about how petitioner touched her, and with each intrusive action, petitioner asked her whether her boyfriend had touched her that way.

She first yelled at him to stop, and he said he would if she wanted him to, but he said that he wasn't doing anything that she didn't want, and petitioner continued.  The victim froze, and ceased telling him to stop because she went numb and did not think there was anything she could do to get him to stop.[1]  At a certain point, she started crying, and petitioner ended the session, saying he would see her next time.  The victim's father picked her up and she did not tell him what had happened.  She saw that she was bleeding when she returned home.

The abuse went on for the following three years.  After the first session, the victim continued to see petitioner for counseling sessions twice a week for about eight months, until she

---

[1] What was once known as the "fight or flight" response to trauma was refined as a "freeze, fight, or flight response" to trauma.  See, e.g., 34 U.S.C § 10251(a)(30)(B)(ii) ("[T]he term 'mental or behavioral health or suicidal crisis' . . . includes a situation in which a person . . . may exhibit symptoms, including . . . behavioral reactions (such as the trigger of a freeze, fight, or flight response").

turned thirteen years old.  Thereafter, the sessions increased to four times a week.  She testified

that petitioner sexually assaulted her at each session or almost every session.  The sessions and

the sexual abuse continued even when she started attending a new religious school.  At one point,

when her parents were in synagogue, petitioner came to her home and sexually assaulted her

there.

 The victim did not report the abuse until a counselor at a new school evaluated her based

on finding her depressed and anxious.  At first, the victim did not open up, but ultimately told the

new counselor about petitioner's abuse.  The counselor was required by law to report the abuse

and did so.  When the victim was first interviewed by law enforcement, she likewise did not

open up initially, but eventually gave the full story.  At trial, the prosecution called an expert to

testify as to why victims of sexual abuse will often have a "delayed outcry" response.

 The primary strategy of the defense was to undermine the victim's credibility in one of

two ways: (1) by showing she had a motive to fabricate the allegations of sexual abuse and (2) by

showing that she was biased against the Satmar community because of the strict rules described

above.  The main theory for the false allegations was that the victim thought petitioner was

responsible for reporting to authorities that she was having a sexual relationship with her

boyfriend, who was subsequently arrested and prosecuted for that sexual relationship.

 There was circumstantial evidence in support of that theory, including the delayed outcry;

the length of time the victim suffered the abuse; her initial statement to law enforcement; and

inconsistencies in the timeline and dates she gave detectives compared to her testimony at trial.

 More poignantly, according to petitioner (and only petitioner), at some point during the

counseling sessions, the victim disclosed to him that she had been sexually molested in the past.

But when petitioner brought this to the attention of the victim's parents, they "indicated that the

abuse was a figment of [the victim's] imagination and stated, '[s]he does this all the time.'" Petitioner sought to cross-examine the victim on that disclosure, but the trial court sustained the prosecution's objections. The defense also called character witnesses, some of whom received counselling from petitioner, who testified that petitioner had never sought to abuse them.

Petitioner also testified in his own behalf. He described the victim, her difficulties being part of the Satmar community, and denied each of her material accusations. He further testified as to how, when the victim's boyfriend was arrested, she initially blamed her father, but in her last counseling session, she said petitioner was also responsible and that she was going to "get him."

Petitioner was sentenced to 103 years of incarceration, which was reduced to 50 years by operation of law. See PL §§ 70.30(1)(c), (e)(vi). When he appealed his conviction to the Appellate Division, he was represented by the same attorney that represented him at trial. After that appeal was unsuccessful, petitioner retained new counsel, and collaterally attacked his conviction on grounds of ineffective assistance of counsel ("IAC"). His theory was that his trial counsel was substantively ineffective, and that his appellate counsel (the same attorney) failed to raise the IAC claim on direct appeal because he suffered from a conflict of interest. The collateral attacks were unsuccessful, and petitioner then unsuccessfully petitioned for a writ of coram nobis. This federal habeas petition followed.

## DISCUSSION

### I.    Habeas Corpus Review

This petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>generally</u> <u>Williams v. Taylor</u>, 529 U.S.

362 (2000).  As the Supreme Court has "noted many times, AEDPA sharply limits federal

review of habeas claims raised by state prisoners."  <u>Klein v. Martin</u>, No. 25-51, 607 U.S. __ (Jan.

26, 2026).  AEDPA mandates a deferential review of a state prisoner's petition, limited to

"ground[s] that he is in custody in violation of the Constitution or laws or treaties of the United

States."  <u>See</u> 28 U.S.C. § 2254(a).  Known as "AEDPA deference," this means:

> "a habeas writ shall not issue with 'respect to any claim that was adjudicated on
> the merits in State court proceedings' unless the state court adjudication 'resulted
> in a decision that was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the
> United States' or 'resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.'"

<u>Carew v. Morton</u>, 150 F.4th 150, 160 (2d Cir. 2025) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

"These standards require federal courts to give the 'benefit of the doubt' to merits decisions

issued by the courts of the sovereign States [and] must 'show far more' than 'clear error.'"

<u>Klein</u>, 607 U.S. at __ (citing <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002), and <u>Shinn v. Kayer</u>,

592 U. S. 111, 118 (2020)).  Before a federal court can reach the merits of a petitioner's claims,

however, the claims must be exhausted and not procedurally barred, unless an exception to either

prerequisite applies.

### A.    Exhaustion

Generally, a state prisoner must exhaust his state law remedies before bringing them to

federal court.  To exhaust his claims, the state prisoner must "fairly present federal claims to the

state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) (internal marks omitted)). "The federal habeas corpus exhaustion requirement is grounded in principles of federal-state comity." Ellman v. Davis, 42 F.3d 144, 147 (2d Cir. 1994) (citing Coleman v. Thompson, 501 U.S. 722, 731 (1991).

There are several non-overlapping avenues toward exhaustion for a New York prisoner. The first and most intuitive path is on direct appeal, where a defendant convicted at trial raises the federal constitutional infirmities of his conviction before the Appellate Division, and perhaps also the New York Court of Appeals. See Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005) ("In New York . . . a criminal defendant must first appeal his or her conviction to the Appellate Division [and] the Court of Appeals"). Having no more rungs on the ladder to step to, the claim would be exhausted, and the prisoner could ostensibly petition a federal court for habeas review of those claims.

The second path is filing a motion under CPL § 440, colloquially called a "440 motion," to vacate or set aside his conviction. A 440 motion is a collateral attack on a conviction, generally applicable only to claims that were not readily apparent on the record, and therefore could not have reasonably been made on direct appeal. See, e.g., Hansen v. Johnson, 680 F. Supp. 3d 247, 253-54 (E.D.N.Y. 2023) ("[T]he purpose of a CPL § 440.10 motion is to develop facts that are outside the trial record and that the section does not apply to facts that should have been on the record prior to judgment"). Indeed, if the claims brought in the prisoner's 440 motion could have been raised on direct appeal, the court would generally deem the claims "procedurally barred." See, e.g., People v. Degondea, 3 A.D.3d 148, 157, 769 N.Y.S.2d 490, 497 (1st Dep't 2003) ("In applying this procedural bar to collateral relief, we give effect to the

legislative intent that the CPL 440.10 motion not be 'employed as a substitute for direct appeal[.]'" quoting People v. Cooks, 67 N.Y.2d 100, 103, 500 N.Y.S.2d 503, 505 (1986)).  In practice, however, New York courts that find claims procedurally barred on a 440 motion will typically address the merits alternatively (because the result does not change).  See, e.g., People v. Fuller, 28 Misc. 3d 1144, 1148, 904 N.Y.S.2d 896, 900 (N.Y. Cnty. Sup. Ct. 2010) ("At the outset, this claim is procedurally barred . . . On its merits, this claim fares no better.").

The final, and most narrow path to exhaust a claim is by a *coram nobis* petition.  A petition for a writ of *coram nobis* is a mechanism for a court to rectify errors that occurred before it.  See Finkelstein v. Spitzer, 455 F.3d 131, 133 (2d Cir. 2006) ("[A]t common law, the writ was used by a court in cases within its own jurisdiction, not to correct errors in other jurisdictions").  Under New York law, a "*coram nobis* proceeding brought in the proper appellate court is the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel."  People v. Bachert, 69 N.Y.2d 593, 596, 516 N.Y.S.2d 623, 624 (1987).  And for federal habeas purposes, "the only claim that appropriately may be exhausted in a *coram nobis* proceeding is one of ineffective assistance of appellate counsel."  See Joseph v. Conway, 671 F. Supp. 3d 248, 263 n.5 (E.D.N.Y. 2023).

### B.    Independent State Law Grounds

Even if the claims are exhausted, there may be other reasons a federal court cannot review them.  For example, a federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment."  Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman, 501 U.S. at 729) (emphasis omitted).

When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision.  See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  Murden, 497 F.3d at 193 (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)).

A New York court's decision denying a 440 motion on grounds that the claim "*could have* been raised on appeal . . . serves as an independent-and-adequate state ground that procedurally bars [a federal court] from reviewing that claim." Chrysler v. Guiney, 14 F. Supp. 3d 418, 454 (S.D.N.Y. 2014) (collecting cases).  Such a claim remains procedurally barred "[e]ven where the state court has ruled on the merits of a federal claim 'in the alternative' [because] the state court has also expressly relied on the petitioner's procedural default." See Murden, 497 F.3d at 191.

### C.    Reaching the Merits of a Procedurally Barred Claim

Even if a claim is procedurally barred, a habeas petitioner "may obtain review of his claim on the merits if he shows that equity demands it." Murden, 497 F.3d at 194 (citing Dretke v. Haley, 541 U.S. 386, 393 (2004)).  For a federal court to do so, the petitioner must demonstrate either "cause and prejudice for the procedural default," or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." Dretke, 541 U.S. at 393.

Most commonly, a federal habeas court can reach the merits of the procedurally barred claim when counsel has been constitutionally ineffective for failing to raise or preserve an argument at trial, or appellate counsel failed to raise a claim that had a reasonable probability of

prevailing on appeal.  See, e.g., Edwards v. Carpenter, 529 U.S. 446, 450-51 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself"); Cox v. United States, 783 F.3d 145, 147-48 (2d Cir. 2015) ("[P]etitioner is not obliged to raise a claim of ineffective assistance of counsel while represented by the very attorney alleged to have rendered ineffective assistance.").

To do that, however, "a habeas petitioner must either have properly presented and exhausted an ineffective assistance of counsel claim in the state courts . . . or, if the ineffective assistance of counsel claim is itself procedurally barred, separately show that there is 'cause' excusing said procedural default as well as prejudice resulting from the error[.]"  Larweth v. Conway, 493 F. Supp. 2d 662, 669 (W.D.N.Y. 2007) (citing Edwards, 529 U.S. at 451-52).

In a similar vein, federal courts can reach the merits without deciding the procedural bar issue if the merits are "easily resolvable against the habeas petitioner."  Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel [reaching the merits first] if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues"); Dunham v. Travis, 313 F.3d 724, 729-30 (2d Cir. 2002) ("[H]urdling the procedural question to reach the merits of a habeas petition is justified in rare situations").

If all the procedural hurdles have been cleared, the Court must then "look[] to the last state court decision rendering a judgment on the petitioner's federal claim" through the lenses of AEDPA deference.  Clark v. Perez, 510 F.3d 382, 394 (2d Cir. 2008) (citing Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006)); see also Carew, 150 F.4th at 160 (defining AEDPA

deference).  If the Court reaches the merits of a procedurally barred claim, the Court reviews it *de novo*.  Clark, 510 F.3d at 394.

## II.    **Weberman's Petition**

Petitioner raises six federal constitutional claims in his habeas petition: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) prosecutorial misconduct; (4) evidentiary rulings that violated petitioner's confrontation rights; (5) legal insufficiency of the evidence; and (6) impermissibly duplicitous charges.  Petitioner raised all of these arguments at some point before a state court.

***Direct Appeal.***  On direct appeal, petitioner argued some variation of points (3) through (6).  See People v. Weberman, 134 A.D.3d 862, 22 N.Y.S.3d 97 (2nd Dep't 2015), lv. denied, 27 N.Y.3d 1156, 39 N.Y.S.3d 390 (2016).  The Appellate Division disposed of points (4) and (5) on the merits and found points (3) and (6) unpreserved under CPL § 470.05, New York's "contemporaneous objection rule."  Generally, arguments deemed unpreserved under that rule are considered procedurally barred for federal habeas purposes.  See Scott v. James, No. 20-cv-07809, 2023 WL 5048237, at *3 (S.D.N.Y. Aug. 8, 2023) ("The procedural rule regarding contemporaneous objections . . . is an independent and adequate state law ground that serves as a procedural bar to preclude federal habeas review."); Thompson v. Patrick, 2018 WL 8733339, at *4 (E.D.N.Y. Aug. 13, 2018) (same, collecting cases).  The Court will therefore review points (4) and (5) with AEDPA deference.

***440 Motion.***  On his 440 motion, he argued point (2) for the first time, along with repackaged versions of points (3) through (6).  As it relates to his habeas petition, his IAC claim was based on his counsel's failure to preserve or adequately argue the other points.  The court found every claim to be procedurally barred.  See People v. Weberman, Ind. No. 1589/2011

(Kings Cnty. Sup. Ct. Feb. 22, 2019).[2]  However, "because New York courts do not consistently deny § 440.10 claims [as procedurally barred] when the same counsel represented the defendant at trial and on appeal . . . habeas review is not barred." Gross v. Graham, 802 F. App'x 16, 18 (2d Cir. 2020).  He unsuccessfully appealed the denial of his 440 motion, thereby exhausting the IAC claim.  The Court will therefore review points (2), (3), and (6) *de novo*.

*Coram Nobis*.  Finally, in his petition for a writ of *coram nobis*, he argued point (1) for the first time.  See People v. Weberman, 183 A.D.3d 921, 122 N.Y.S.3d 563 (2020), lv. denied, 35 N.Y.3d 1071, 129 N.Y.S.3d 381 (2020).  The Appellate division disposed of it on the merits, and therefore the Court will review point (1) with AEDPA deference.

Petitioner's IAC claims are rooted in his counsel's alleged failure to raise or adequately argue the other points raised in his habeas petition.  Accordingly, the Court will address those substantive points before reaching their application to the IAC claims.

### A.    Prosecutorial Misconduct

These claims are reviewed *de novo*.  Petitioner contends that prosecutors violated his due process rights by failing to disclose the victim's complete therapy records and suborning perjurious testimony from the victim.

### i.  Failure to Disclose Favorable Evidence

"Well-established Supreme Court precedent holds that the prosecution has a clear and unconditional duty to disclose all material, exculpatory evidence." Lewis v. Conn. Comm'r of Corr., 790 F.3d 109, 121 (2d Cir. 2015) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). "Undisclosed evidence is material if it could reasonably have 'put the whole case in such a different light as to undermine confidence in the verdict.'" Klein, 607 U.S. at __ (quoting

---

[2] The decision on petitioner's 440 motion was filed under ECF No. 13-1.

Strickler v. Greene, 527 U. S. 263, 290 (1999)).  "This duty exists whether or not the defense

requests exculpatory evidence."  Id. (citing United States v. Bagley, 473 U.S. 667, 681-82

(1985)).  "The government has an affirmative duty to disclose favorable exculpatory evidence

that would impeach the credibility of witnesses."  Jimenez v. Stanford, 96 F.4th 164, 199 (2d Cir.

2024) (citing Giglio v. United States, 405 U.S. 150, 154-55 (1972)).

"In other words, true Brady material must be (1) favorable, (2) suppressed, and (3)

prejudicial."  United States v. Hunter, 32 F.4th 22, 31 (2d Cir. 2022).  "The Supreme Court has

never required a defendant to exercise due diligence to obtain Brady material."  Lewis, 790 F.3d

at 121 (citing United States v. Agurs, 427 U.S. 97, 107 (1976)).  But "evidence is not suppressed

for Brady purposes if the defendant either knew, or should have known, of the essential facts

permitting him to take advantage of any exculpatory evidence."  Id. (quoting DiSimone v.

Phillips, 461 F.3d 181, 197 (2d Cir. 2006)) (cleaned up).

At issue here are the victim's therapy records.  According to petitioner, the records were

held by the Jewish Board of Family and Children Services ("JBFCS"), which sent the victim's

therapy records to the prosecutors who then turned them over to defense counsel.  As it turns out,

JBFCS only sent a portion of the therapy records to the prosecution, but the prosecutors still

turned over everything they were given by JBFCS to the defense.  Petitioner obtained the full set

of therapy records after he was convicted, as part of discovery during the victim's related civil

lawsuit.  Petitioner's Brady theory is that the victim's "*complete* therapy records . . . were readily

accessible to prosecutors [who were] therefore . . . duty-bound to obtain and disclose the records

to the defense."

Petitioner's Brady theory falls flat because nothing was suppressed.  Although "the

Supreme Court in Brady held that the Government may not properly conceal exculpatory

evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." United States v. Ohle, No. 08-cr-1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) (quoting United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990)).  Contrary to petitioner's contentions, prosecutors are not "duty bound" to investigate matters favorable to a defendant; they are simply required to disclose the materials in their possession that are favorable to the defendant.  Habeas relief is thus unwarranted on this ground.

### ii.  Suborning Perjury

It is clearly established under Supreme Court precedent that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Drake v. Portuondo, 553 F.3d 230, 241 (2d Cir. 2009) (quoting Agurs, 427 U.S. at 97).  The Second Circuit has "interpreted Supreme Court precedent as holding that 'if it is established that the government knowingly permitted the introduction of false testimony reversal is virtually automatic.'" Id. (quoting Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003)).  There are thus three elements to this kind of claim: (1) that the testimony was false; (2) "the prosecution actually knew of [the] false testimony;" and (3) "there is any reasonable likelihood that the false testimony could have affected the jury."  See id.

Petitioner argues that prosecutors suborned the victim's false testimony before the grand jury.  His theory is that her trial testimony was vague and therefore her grand jury testimony could not have possibly warranted the 88-count indictment the grand jury returned.  Petitioner's argument is inherently weak because it baselessly assumes that the victim testified as to each

specific instance of sexual abuse before the grand jury.  But even if that was true, petitioner's argument holds no water:

> The petit jury's subsequent guilty verdict means not only that there was probable cause to believe that [petitioner was] guilty as charged, but also that [he is] in fact guilty as charged beyond a reasonable doubt.  [Therefore], any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

United States v. Mechanik, 475 U.S. 66, 70 (1986); see also United States v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998) (Rejecting defendant's claim that "the grand jury was presented with perjured testimony" because "any error resulting from the evidence used to indict him" was "rendered harmless" by "the jury's verdict of guilty").  Habeas relief is thus unwarranted on this ground.

### B.    Evidentiary Rulings

These claims are reviewed with AEDPA deference.  Petitioner claims that the Appellate Division's affirmance of the trial court's exclusion of evidence was an unreasonable application of Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a *complete* defense.") (quotations omitted). Compounding that AEDPA deference is the principal that the "Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."  See Marshall v. Lonberger, 459 U.S. 422, 438 (1983).  Relevant here, the trial court excluded evidence on three grounds: (i) New York's Rape Shield Law, CPL § 60.42; (ii) hearsay; and (iii) relevance.

The Appellate Division's affirmance of the trial court's evidentiary rulings was not contrary to any clearly established Supreme Court precedent.  As discussed further below, all of the evidence petitioner sought to introduce went toward the victim's biases, either against him

individually or the Satmar community.  Petitioner claims these decisions were a misapplication of Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986), which held that prohibiting a defendant from exploring a witness's bias violates the confrontation clause.

That is not what happened in petitioner's trial.  In fact, the Appellate Division found that he had a wide latitude to explore the victim's biases, by the introduction of other evidence and on cross examination.  See Weberman, 134 A.D.3d at 863, 22 N.Y.S.3d at 98 (Petitioner "was given ample opportunity to develop evidence at trial to support his position that his involvement with the arrest of the [victim's] former boyfriend provided [her] with a motive to fabricate her accusations against him.").  Although petitioner may have wanted more, that is not what the Constitution requires.  See Rock v. Arkansas, 483 U.S. 44, 56 (1987) ("[T]he right to present relevant testimony is not without limitation [and may] bow to accommodate other legitimate interests in the criminal trial process.") (quoting Chambers v. Missouri, 410 U.S. 284, 295 (1973); see also Van Arsdall, 475 U.S. at 681 ("[The Supreme Court] has stressed on more than one occasion [that] the Constitution entitles a criminal defendant to a fair trial, not a perfect one.") (citations omitted).  Applying AEDPA deference, habeas relief is thus unwarranted on these grounds.

At the same time, petitioner's IAC claim is predicated on his counsel's alleged failure to sufficiently argue or preserve these points, and the Court will review his IAC claim *de novo*. Accordingly, the Court will review the evidentiary rulings *de novo* in order to adequately evaluate petitioner's IAC claim.

### i.  Rape Shield Law

New York's Rape Shield Law excludes "[e]vidence of a victim's sexual conduct" unless it is shown to be "relevant and admissible in the interests of justice." CPL § 60.42.  "[S]tate and

federal rule makers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," see United States v. Scheffer, 523 U.S. 303, 308 (1998), "based on concerns about, among other things, harassment, prejudice, [or] confusion of the issues," Van Arsdall, 475 U.S. at 679. "This is so even when exclusionary rules, like [New York's] rape shield law, diminish a defendant's 'ability to confront adverse witnesses and present a defense,' . . . so long as their application is not 'arbitrary or disproportionate to the purposes they are designed to serve[.]'" Garrison v. Lee, 832 F. App'x 28, 30 (2d Cir. 2020) (quoting Michigan v. Lucas, 500 U.S. 145, 149 (1991), and Rock, 483 U.S. at 56).

As it applied to petitioner, the Rape Shield Law kept him from (a) introducing evidence from a separate prosecution of the victim's boyfriend on sexual misconduct charges and (b) cross examining the victim about whether it was true that she had disclosed to petitioner that she had previously been molested. Neither ruling was a misapplication of the Rape Shield Law.

The evidence of the boyfriend's prosecution "would at a minimum constitute another statutory rape of [the victim and] preclusion of such evidence under the Rape Shield Law . . . was entirely proper." See People v. Lane, 47 A.D.3d 1125, 1127, 849 N.Y.S.2d 719, 722 (3rd Dep't 2008). This did nothing to curtain petitioner's right to make his defense because he had ample means to make the same point (which he did) with other evidence in the record. See, e.g., People v. Halbert, 80 N.Y.2d 865, 866, 587 N.Y.S.2d 891, 892 (1992) (Trial court did not err by admitting "evidence of a relationship between the minor complainant and her male friend" but "precluding cross-examination of the complainant with respect to the sexual aspect of that relationship").

Likewise, barring petitioner from cross examining the victim about her prior, supposedly false allegations of molestation, was entirely proper. Conceivably, evidence of fabrication could

justify bypassing the Rape Shield Law "in the interests of justice."  See CPL § 60.42; cf. United States v. Stamper, 766 F. Supp. 1396, 1402 (W.D.N.C. 1991) (Permitting cross-examination on a similar subject because there were "several facts . . . indicative of a contrived scheme of fabrication on the part of the complainant.").  Under New York law, petitioner first needed to offer "sufficient proof . . . that the complaints were indeed false [or] that the particulars of the complaints . . . suggest a pattern casting substantial doubt on the validity" of the prior complaints.  See People v. Mandel, 48 N.Y.2d 952, 953, 425 N.Y.S.2d 63, 64 (1979).  But here, nothing other than petitioner's word, which is entirely self-serving, suggests that the victim even made these prior allegations of molestation, let alone that they were fabricated.  Thus, even on *de novo* review, habeas relief is unwarranted on this ground.

### ii.  Hearsay

"[T]he exclusion of evidence on the basis of a valid application of the hearsay rules may violate due process if the evidence is sufficiently reliable and crucial to the defense."  Krivoi v. Chappius, 573 F. Supp. 3d 816, 829 (E.D.N.Y. 2021).  The trial court excluded as hearsay recordings of a controlled call, between petitioner and the victim, that were orchestrated by police investigators.  On the call, petitioner denied engaging in any sexual contact with the victim and asked the victim why she was contacting him after the passage of so much time.  The victim responded that she had broken off contact with petitioner because "her boyfriend was arrested [and] she just felt that [petitioner] did all that . . . And [the victim] was very . . . hurt about it."

Petitioner sought to introduce this recording as more evidence establishing the victim's motive to fabricate the allegations against him or, alternatively, as impeachment evidence.  His theory is the same as described above: because he was involved in the arrest of the victim's

boyfriend, she had a motive to falsely accuse him. The trial court rejected his attempts to introduce it under the state-of-mind exception to the rule against hearsay.

Petitioner's hearsay exception argument is weak, but even assuming the recording fell under any hearsay exception, excluding it would not warrant habeas relief because it was not "crucial to the defense." Krivoi, 573 F. Supp. 3d at 829. Petitioner admits that the recording is nothing more than "evidence to help [the jury] evaluate [the victim's] credibility" and "her motive to fabricate." Although "undermining [a key witness's] credibility [is] crucial to the defense," see Richards v. Harvey, No. 23-CV-3914, 2025 WL 871666, at *14 (E.D.N.Y. Mar. 20, 2025), excluding this recorded call did not stop petitioner from doing so. Petitioner admits that "the jury did hear conflicting testimony on what [the victim] knew and when" and only complains that the calls themselves were not played in open court.

But there is no smoking gun in that recording, and excluding it did nothing to change the fact that petitioner had "ample opportunity" to "support his position that his involvement with the arrest of the complainant's former boyfriend provided the complainant with a motive to fabricate[.]" Weberman, 134 A.D.3d at 863, 22 N.Y.S.3d at 98. Surely, having the jury hear the calls would have been preferable to petitioner, but again, accommodating his preferences is not what due process requires. See Singh v. Quarantillo, No. 25-cv-6392, 2026 WL 32759, at *4 (E.D.N.Y. Jan. 6, 2026) ("Due process is not a results-based function."). Thus, even on *de novo* review, habeas relief is unwarranted on this ground.

    *iii.  Relevance*

"It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their

testimony." Brinson v. Walker, 547 F.3d 387, 392 (2d Cir. 2008) (citing Pennsylvania v.

Ritchie, 480 U.S. 39, 51 (1987)). Petitioner sought to introduce various writings made by the

victim that, at least according to petitioner, showed her "biases toward the Satmar community"

and "undermined her testimony." Petitioner compares the exclusion of this evidence to other

cases where excluding evidence showing about a witness's racial bias or motive to testify in

favor of the prosecution violated due process. E.g., Alford v. United States, 282 U.S. 687

(1931); Brinson, 547 F.3d at 393.

   Petitioner's case is a far cry from Alford or Brinson. The trial judge reviewed all of the

writings *in camera* and admitted two into evidence; petitioner describes one of the writings as

favorable to the prosecution, and the other writing as favorable to the defense. As with his other

evidence-based arguments, excluding the other writings did not stop petitioner from making the

points he sought to make with the writings (i.e., the victim's bias toward the Satmar community).

This is not the type of "inflexibly applied" evidentiary rulings that might violate due process.

See Washington v. Schriver, 240 F.3d 101 (2d Cir. 2001).

   Even if the writings were relevant (which is doubtful), excluding them did not violate

petitioner's confrontation rights, because all he was entitled to was "some cross-examination of a

witness to show bias." See United States v. Abel, 469 U.S. 45, 51 (1984). The record is replete

with petitioner's defense counsel interrogating the victim about her views on the Satmar

community, including whether she "hate[d] everybody in the Satmar community" and when she

started "to foster great hatred against individuals in the Satmar community." In other words,

petitioner had ample opportunity to explore the victim's biases, which he did. Thus, even on *de

novo* review, habeas relief is unwarranted on this ground.

### C.    Sufficiency of Evidence

This claim is reviewed with AEDPA deference.  Petitioner challenges the sufficiency of the evidence as to his convictions that required, as an element of the offense, that the victim was under the age of thirteen at the time.  See PL § 130.75.  He claims that the Appellate Division's rejection of his argument violated the clearly established law in Jackson v. Virginia, 443 U.S. 307 (1979), and In re Winship, 397 U.S. 358 (1970).

### i.    Conflicting Evidence

The victim testified that petitioner started abusing her in March 2007.  Petitioner does not dispute that she was twelve years old in March 2007.  Although the victim could not remember the specific dates when petitioner first abused her, she testified that it occurred between the Jewish holidays of Purim and Passover that year (i.e., between March 4 and April 10, 2007).  The victim added that she was in the sixth grade at the time, and that one of the reasons her parents sent her to petitioner for counseling was because she was found "misusing" the family computer.

In contrast, the victim's mother testified that the family computer incident (and the related referral to counseling) occurred in 2008.  The principal of the school apparently testified that the parents' entered into an agreement showing that the counseling with petitioner first started in 2008.  And finally, the investigating detective testified that the victim first told him that the abuse started in 2008.

The prosecution covered its bases and reconciled all of these supposed inconsistencies for the jury.  It argued that although the victim's mother had testified about counseling that occurred during 2008, she did not testify that counseling had *first* started in 2008.  In fact, the victim's mother had testified that she was "100% sure" that the counseling started in 2007.  As to the

principal's testimony, the prosecution contended that the principal testified that the agreement was entered into because the victim's parents were already $60,000 in arrears in 2008, suggesting that the counseling had started well before then. As to the detective, he testified that although the victim had told him the abuse started in 2008, she also told him that she was 12 years old at that time, thus supporting its argument that the victim had simply misstated the year to the detective.

  *ii. Analysis*

  A petitioner seeking habeas relief based on insufficiency of the evidence bears an extra high burden subject to a "twice-deferential standard." Santone v. Fischer, 689 F.3d 138, 148 (2d Cir. 2010). First, the standard for reviewing claims of legal insufficiency is extremely narrow: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Thus, even when "faced with a record of historical facts that supports conflicting inferences," the court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." See Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (internal quotation marks omitted); Williams v. Collado, 682 F. Supp. 3d 286, 299 (E.D.N.Y. 2023) ("[W]hen reviewing a claim for insufficient evidence on a habeas review, a court must defer to the jury's 'assessments of the weight of the evidence [and] the credibility of witnesses[.]'" quoting Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996))).

Although there was arguably – and only arguably – some evidence that contradicted the victim's testimony, there was abundant evidence for the jury to reconcile any factual disputes. Petitioner acknowledges by his silence that the jury was properly instructed on how to evaluate conflicting evidence. In no way could the jury be called "irrational" for accepting the prosecution's view of the facts rather than that of petitioner, as would be required under Jackson and its progeny. Applying AEDPA deference, habeas relief is unwarranted.

As with the evidentiary rulings, petitioner's IAC claim is predicated on his counsel's alleged failure to sufficiently argue or preserve this point. Accordingly, the Court will review it *de novo* in order to adequately evaluate the IAC claim *de novo*.

When reviewing "a challenge to a conviction based on sufficiency of the evidence *de novo*" the Court must "view the evidence in the light most favorable to the government, resolve all credibility issues in favor of the verdict, and credit every available inference in favor of the government." United States v. Cavigliano, 659 F. App'x 65, 68 (2d Cir. 2016) (citing United States v. Cuti, 720 F.3d 453, 461-62 (2d Cir. 2013)). Resolving the credibility disputes in favor of the verdict moots petitioner's entire argument. Petitioner presents nothing more than competing interpretations of testimony, and argues that the jury should have seen it his way. But that is merely a weight of the evidence claim, which petitioner essentially admits by arguing that "the overwhelming weight of the evidence established that contrary to R.D.'s claim, [p]etitioner did not even begin having contact with [the victim] until April 2008." But such claims are not cognizable on federal habeas review. E.g. Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in [CPL] § 470.15(5), whereas a legal sufficiency claim is based on federal due process

principles.") (citing <u>Jackson</u>, 443 U.S. at 318-19).  Thus, even on *de novo* review, habeas relief is unwarranted on this ground.

### D.    Duplicity and Multiplicity

This claim is reviewed *de novo*.  Petitioner claims that his indictment was unconstitutionally duplicitous or multiplicitous.  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974).  His theory is that the victim's testimony revealed that the time periods alleged in the indictment were infirm and thus duplicitous (or multiplicitous).  <u>See</u>, <u>e.g.</u>, <u>People v. Beauchamp</u>, 74 N.Y.2d 639, 641, 541 N.Y.S.2d 977, 978 (1989) (indictment alleging that one criminal act occurring at some point "'in a continuous course of conduct' over a period in excess of nine months [was] duplicitous.").

#### i.  Legal Standard

"A 'duplicitous' count in an indictment is one that charges more than one offense."  <u>See</u> <u>Hogan v. West</u>, 448 F. Supp. 2d 496, 508 (W.D.N.Y. 2006) (citing CPL § 200.30).  Multiplicity occurs when an indictment "charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed."  <u>United States v. Maxwell</u>, 534 F. Supp. 3d 299, 322 (S.D.N.Y. 2021) (quoting <u>United States v. Chacko</u>, 169 F.3d 140, 145 (2d Cir. 1999)); <u>see</u> <u>also</u> <u>United States v. Kandic</u>, 134 F.4th 92, 102 (2d Cir. 2025) ("The multiplicity doctrine prevents the government from 'charging the same offense in more than one count.'").

New York criminalizes courses of sexual abuse and individual criminal acts that constitute sexual abuse. Compare, e.g., PL § 130.75, with PL § 130.50. The former are called "continuing offenses" because they criminalize a series of multiple acts as one crime. See, e.g., People v. Quinones, 8 A.D.3d 589, 590, 779 N.Y.S.2d 131, 132 (2nd Dep't 2004). A prosecutor can charge a defendant with committing a course of sexual abuse that lasts one year, and also charge the defendant with committing each individual criminal sexual act that occurred that year, in the same indictment. When charging a defendant, the prosecutor is obliged to specify, at least with reasonable specificity, when the crimes occurred. People v. Morris, 61 N.Y.2d 290, 295, 473 N.Y.S.2d 769, 772 (1984) ("When time is not an essential element, the indictment is often permitted to state the time in approximate terms").

Cognizant of the duplicity and multiplicity problems that this statutory scheme poses, the New York legislature forbade subsequent prosecutions of any crimes that fall within a course of sexual abuse that was formerly charged, and required that sentences imposed for any crimes that fall within a course of sexual abuse simultaneously charged run concurrently with the sentence for the course. See PL §§ 70.25(2-e), 130.75(1), 130-80(1)-(2); Crowell v. Graham, No. 17-cv-0176 (N.D.N.Y. Apr. 3, 2018) (discussing legislative history and intent).

Another, less obvious problem lurks behind these "continuing crimes." Say a victim reports that a defendant sexually abused her for a year. The victim does her best to recall the details, but naturally wouldn't remember everything. The prosecutor drafts the indictment, alleging a course of sexual abuse that occurred between January 1 and December 31 of that year, and simultaneously alleges 6 criminal sexual acts occurring throughout that year, approximating one criminal sexual act every two months. At trial, the victim testifies in detail about multiple criminal sexual acts that happened at different times throughout the year, but cannot particularize

with any specificity the date and time of the acts.  In other words, her testimony supports the course of sexual abuse charge (which spans the entire year) but none of the individual criminal sexual act charges (which span the entire year).  Nonetheless, the jury convicts on all counts.

This hypothetical roughly tracks what happened in People v. Atta, 126 A.D.3d 713, 5 N.Y.S.3d 455 (2nd Dep't 2015).  There, "the indictment, on its face, may have been sufficient [but] the trial testimony revealed that the complainants lacked any ability 'to particularize the date and time of the alleged [offenses] and that there was no real basis in fact for the intervals alleged[.]"  Id., 126 A.D.3d at 715-16, 5 N.Y.S.3d at 457.  In dismissing the individual act charges, the court found that "arbitrarily dividing [the] otherwise excessive time periods into two-month intervals despite the absence of any basis in fact, 'cannot detract from the conclusion that the time periods' with respect to these single-act crimes 'were unreasonable' under the circumstances[.]"  Id.  Consequently, the court in Atta vacated the defendant's convictions relating to the individual criminal sexual acts while keeping the conviction for the course of sexual abuse.  Id.

    ii.  *Analysis*

First, petitioner's indictment does not present to prototypical duplicity or multiplicity problems posed by charging a course of sexual abuse and the specific criminal sexual acts making up that course simultaneously.  The course of sexual abuse that petitioner was convicted of occurred between March 1, 2007, and December 4, 2007.  Every individual criminal sexual act that petitioner was convicted of was alleged to have occurred on or after December 5, 2007.

Petitioner's argument appears to be that, as in Atta, after the victim testified, the duplicity or multiplicity of the indictment became apparent.[3]  But petitioner's case is inapposite.  In Atta,

---

[3]  Likewise, in Maxwell, the Government charged three conspiracies in separate counts: one conspiracy to "entice" minors to engage in illegal sexual activity; one conspiracy to "transport" minors with intent to engage in illegal

the victims "lacked any ability to particularize the date and time" of the offenses.  Id.

Conversely, the victim in petitioner's case testified that, starting March 2007, she saw petitioner

twice per week for counseling until December 5, 2007 (when she turned thirteen), at which time

she began seeing petitioner four times per week for counseling, except for while she was at camp

during July and August.  She described the specific room where those counseling sessions

occurred: inside petitioner's apartment, in "a private little office [with] three locks[.]"  With that

backdrop, the victim testified that petitioner sexually abused her "every time that [she] went" to

counseling.  In other words, the victim provided temporal, geographic and spatial descriptions of

every criminal sexual act.  That is a far cry from Atta.[4]

What petitioner is really arguing is that the victim's testimony was apparently so vague

that it cannot support a guilty verdict on each count.  That is merely another sufficiency or

weight of the evidence claim, but one that "is unavailing and has been rejected in similar cases

involving the sexual abuse of children."  See Cruz v. Griffin, 2019 WL 6220806, at *21

(S.D.N.Y. Oct. 24, 2019).  Indeed, the fact that a child-victim's "testimony included some

inconsistencies and was not date-specific as to when the sexual abuse began is not fatal[.]"  See

Paramore v. Filion, 293 F. Supp. 2d 285, 289-91 (S.D.N.Y. 2003) (Rejecting habeas petitioner's

argument that the victim's testimony was "too vague to meet the State's burden of proof" that

---

sexual activity; and one conspiracy to "commit" sex trafficking of minors.  The court denied the defendant's pretrial motion to dismiss on multiplicity grounds, see Maxwell, 534 F. Supp. 3d at 322, but granted it after trial because the evidence showed that each of the charges was factually rooted in a single conspiracy, and issuing a separate sentence on all three would violate the Double Jeopardy Clause.  See United States v. Maxwell, No. 20-cr-330, 2022 WL 1294433, at *2 (S.D.N.Y. Apr. 29, 2022), aff'd, 118 F.4th 256 (2d Cir. 2024).

[4] In a similar habeas case, the defendant was charged with twelve counts of various child-sex offenses for conduct that occurred over two years.  See West, 448 F. Supp. 2d at 508.  After the victim testified, one count was dismissed because her testimony did not support it, and the defendant then argued that the related counts were "duplicitous." Id. at 507-08.  The court found that "the verdicts of guilty on [the remaining] counts were not rendered inconsistent by virtue of the dismiss[ed] count[.]"  Id. at 508.

"that the sexual conduct occurred [during the] period of time . . . required by NYPL § 130.75."). Habeas relief is thus unwarranted on this ground.

### E.    Ineffective Assistance of Trial Counsel

This claim is reviewed *de novo*.  Petitioner's ineffective assistance of counsel claim boils down to the alleged failure of his trial counsel to adequately argue or preserve points (3) through (6), analyzed above.  To prove ineffective assistance of counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  The first prong requires petitioner to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms."  Id. at 688.  The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did."  Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted).  The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 669.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

Petitioner's ineffective assistance of counsel claim is easily disposed of because, as shown above, all of the claims he alleges that his trial counsel failed to preserve or adequately argue were, on *de novo* review, nonetheless meritless.  "Under the Strickland standard, failure to assert frivolous or otherwise meritless claims cannot serve as valid ground to support a claim of ineffective assistance of counsel."  Mejia v. United States, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010); see also Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) ("It is well established that the failure to include a meritless argument does not fall outside the wide range of

professionally competent assistance to which a defendant is entitled.") (internal marks and alterations omitted).  Habeas relief is thus unwarranted on this ground.

### F.    Ineffective Assistance of Appellate Counsel

This claim is reviewed with AEDPA deference.  The Appellate Division denied this claim on the merits because petitioner "failed to establish that he was denied the effective assistance of appellate counsel."  Weberman, 183 A.D.3d at 921 (citing Jones v. Barnes, 463 U.S. 745 (1983), and People v. Stultz, 2 N.Y.3d 277, 778 N.Y.S.2d 431 (2004)).  In Jones, the Supreme Court held that appointed counsel had no "duty to raise every 'colorable' claim suggested by a client" because doing so "runs the risk of burying good arguments – those that . . . go for the jugular."  463 U.S. at 745 (quotations omitted).

The theory for petitioner's appellate IAC claim boils down to his counsel's failure to raise the IAC claim as to his trial counsel.  But again, the IAC claim as to his trial counsel was meritless, let alone "colorable" as contemplated by Jones.  "AEDPA review . . . protects against 'extreme malfunctions' in the state courts' adjudication of constitutional claims."  Klein, 607 U.S. at __ (quoting Harrington, 562 U.S. at 102).  The Appellate Division's denial of the *coram nobis* petition was not a malfunction, let alone an extreme one.  Habeas relief is thus unwarranted on this ground.

## CONCLUSION

The petition for a writ of habeas corpus is denied, and the case is dismissed. A certificate of appealability shall not issue as the petition raises no substantial constitutional issue. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

_Brian M. Cogan_

U.S.D.J.

Dated: Brooklyn, New York
January 26, 2026